# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

ROBERTO HUNG CAVALIERI,
individually and on behalf of all
others similarly situated,

    *Plaintiff*,

*vs.*

AVIOR AIRLINES C.A.,
a Venezuelan company,

    *Defendant*.

_____/

CASE NO.:

**CLASS ACTION**

## COMPLAINT

The Plaintiff, Roberto Hung Cavalieri (herein "Hung"), individually and on behalf of all others similarly situated, sues the Defendant, Avior Airlines C.A. (herein, "Avior" or "the Airline"):

### NATURE OF THE CASE AND PARTIES

1. This is a breach of contract action.

2. Plaintiff is an individual. He resides in, and is a citizen of, Venezuela, and he is *sui juris*.

3. The Airline is a foreign air carrier as defined by 49 U.S.C. §40102(21) that has its principal office in the Country of the Bolivarian Republic of Venezuela and operates a certified airline that conducts business in Florida; maintains a place

Page | 1

of business in Miami-Dade County, Florida; has regularly scheduled flights between Venezuela and Miami, Florida, and holds a United States Foreign Air Carrier Permit with the U.S. Department of Transportation pursuant to 49 U.S.C. § 413. The Airline also operates licensed and registered companies in Florida, including Avior Airlines Services LLC, and Avior Air Magazine LLC, Avior Cargo LLC, which are all located in Miami-Dade County, Florida.

4. Plaintiff files this class-action complaint alleging that the Airline breached its contract with passengers who paid for air travel provided by the Airline.

## JURISDICTION AND VENUE

5. Venue in this District is proper pursuant to 18 U.S.C. § 1391(b)-(c) because the Airline conducts business in this District and is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced; the Airline's contacts with this District are also sufficient to subject it to personal jurisdiction.

6. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA), because the aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and as a national class at least one class member (as well as the Plaintiff himself) belongs to a different state than that of the Airline; hence there is at least minimal diversity between the parties, and

well over 1,000 plaintiffs in the expected Putative Class. Therefore, CAFA jurisdiction is present.

## FACTUAL ALLEGATIONS

### *Generally Applicable Facts*

7. The Airline is a foreign air carrier that provides international air travel services to consumers flying between the United States of America and the Bolivarian Republic of Venezuela.

8. The Airline's website (https://www.aviorair.com/Home) provides for online booking and lists Miami, Florida as a city that the Airline services.

9. When a passenger books a flight with the Airline, the passenger enters into a contract of carriage with the airline as to that flight. *See* attached Exhibit "A," Contract of Carriage.

10. Pursuant to the Airline's Contract of Carriage, each passenger pays a contractually-defined amount for the Airline's contractually-defined air transportation services.

11. The Contract of Carriage between the Airline and its passengers do *not* provide that, at U.S. departure airports, including Miami International Airport (MIA), passengers would later be required to pay an additional fee (herein the "Exit Fee") before being allowed to board for their flight departing from Miami. Moreover, the

Exit Fee that is charged does not relate to a fee, tax, or charge, that was initially imposed by a government or the operator of an airport after the ticket was purchased.

12. Despite the clear terms of its contract and the payments it received under those contracts, the Airline conducted a program in which its ticket-holding travelers were required to pay such additional, extra-contractual Exit Fees at the Airline's U.S. departure airports, including Miami International Airport (MIA), before being allowed to board for their flights. The Airline already had the undisclosed Exit Fee program in place at the time the Airline entered into a contractual agreement with its passengers.

13. Upon checking in for their flights at MIA, the Airline requires all passengers departing from MIA to suddenly pay USD $80.00 before they are allowed to board a flight destined to Venezuela.

14. Upon information and belief, such Exit Fees were charged to all passengers within the Class (as defined below).

### *Hung's Contract with the Airline*

15. Hung purchased his airline ticket with the Airline through a third-party website known as "Expedia.com," which is owned and operated by Expedia Inc.— the American travel company that operates booking websites. *See* attached Exhibit "B", Expedia Itinerary # 1127130786150.

16. On April 20, 2016, at MIA and prior to boarding flight number 1221, the Airline's personnel (dressed in the Airline's uniforms and attending the Airline's airport customer service desk) required all ticket-holding passengers (i.e., persons who had already contracted for their air travel and paid the sum contractually due) to pay an additional $80.00 in cash at the airport as an "airport exit tax" before departing. See Exhibit "C", receipt for payment of "Exit Fee" to the Airline.

17. Like the other passengers on flight number 1221, Plaintiff paid the previously undisclosed Exit Fee in order to board the aircraft operated by the Airline and for which he already held a valid, fully-paid contract of carriage.

18. The Exit Fee was not disclosed in any of the information or documents provided by the Airline or through its booking agent, Expedia, to Hung.

19. The Airline's Exit Fee charge economically damaged Hung in the amount of the charge.

20. All conditions precedent to the filing of this action have been met, waived or performed.

## CLASS ALLEGATIONS

21. Plaintiff brings this action on behalf of himself and all others similarly situated (the Class or Class Members).

22. Upon information and belief, the Airline has unilaterally charged its customers the Exit Fee alleged above before allowing its customers to board their already-paid-for flights.

23. Unlike common additional charges for baggage, seat upgrades, etc., the Exit Fee charges were not part of the terms and conditions of the contract of carriage between the Airline and its passengers.

24. Plaintiff seeks to represent a Class consisting of all persons that the Airline charged an Exit Fee, from five years prior to the filing of this Complaint through the earlier of: (i) the date, if any, the Airline changes its contract to expressly include Exit Fees; and (ii) the date of class certification.

25. Excluded from the Class are 1) Defendant, its agents, subsidiaries, parents, successors, predecessors, and any entity in which it or its parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, 4) the legal representatives, successors, or assigns of any such excluded person; and 5) Plaintiff's counsel and Defendant's counsel.

26. Plaintiff and Class Members were economically harmed by the Airline's breach of its written contract.

27. This suit seeks damages for recovery of economic injury on behalf of the Class; the suit—expressly—is not intended to request any recovery for personal injury, lost baggage, delayed flights, or claims related thereto.

28. <u>Numerosity</u>: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Upon information and belief, the Airline has thousands of consumers who fall into the definition of the Class, and the Exit Fee has been in place for numerous years involving all of the Class Member passengers during the applicable time period. Class Members can be identified through the Airline's records or the Airline's agents' or contractors' records. The joinder of the Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court in avoiding a multiplicity of identical suits.

29. <u>Typicality</u>: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained economic damage arising out of the Airline's uniform breaches of its contract. Specifically, each Class Member entered into a contract that defined the terms of his or her relationship with the Airline and paid the full sum due under the contract. To provide the service that the Class Members contracted for and paid for, the Airline charged each Class Member a so-called "Exit Fee," without any basis to do so under the terms of the written contract. Given that each Class Member has suffered the same legal injury as

a result of the Airline's common course of conduct, Plaintiff's claims are typical of the Class.

30. <u>Adequate Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions and other complex litigation. Class counsel have the ability to bear the cost of prolonged litigation. Plaintiff has no interests antagonistic to those of the Class, and the Airline has no defenses unique to Plaintiff.

31. <u>Commonality and Predominance</u>: This case will turn largely on the resolution of a singular question of law: whether, by charging the Exit Fees, the Airline breached the Contract of Carriage that it entered into with each Class Member. The resolution of that issue will involve common facts that apply generally to the Class Members. Given that the case turns almost entirely upon that singular legal inquiry, which is predicated on generally applicable facts, and that damages may be readily calculated, the questions of law and fact common to the claims of Plaintiff and the Class predominate over any questions that may affect individual Class Members.

32. <u>Superiority</u>: This case is also appropriate for class certification as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The actual damages suffered by the individual members of the Class will likely be

relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by the Airline's actions. In addition, the Airline Deregulation Act of 1978 preempts statutory claims that would enable greater damages and fee-shifting—essentially leaving passengers with only the private right of breach of contract claims. Given the limited amount of damages per breach (less than $100), it would be virtually impossible for individual Class Members to obtain effective relief from the Airline's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

33. The interest of Class Members in individually controlling the prosecution of separate claims against the Airline are small because the maximum damages in an individual action for the breaches of contract are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

## BREACH OF CONTRACT

34.     Plaintiff re-alleges and incorporates by reference paragraphs 1-33 above.

35.     Plaintiff and the other Class members entered into a written contract with the Airline.

36.     The Airline breached that contract by charging monies not provided under the terms and conditions of the contract in order to fulfill their obligations under the contract.

37.     Plaintiff and the other Class members were damaged as a result of the Airline's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Roberto Hung Cavalieri, individually and on behalf of the Class, requests the following relief:

38.     As a result of the Airline's breach of contract, Plaintiff seeks for himself and each Class Member:

(a)     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.

(b)     Damages for each and every breach in the amount of the extracontractual Exit Fees Defendant collected.

(c) An award of attorney's fees and costs to counsel for Plaintiff and the Class from any recovery for the Class.

(d) Any other relief the Court may deem just and proper.

## TRIAL BY JURY

Plaintiff demands a trial by jury on all counts so triable.

                        Respectfully submitted,

                         */s/ John Cody German*
                        JOHN CODY GERMAN

John G. Crabtree, FBN 886270
Charles M. Auslander, FBN 349747
Brian C. Tackenberg, FBN 107224
CRABTREE & AUSLANDER
240 Crandon Boulevard, Suite 101
Key Biscayne, Florida 33149
Tel: (305) 361-3770
Fax: (305) 437-8118
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
btackenberg@crabtreelaw.com
floridaservice@crabtreelaw.com

Brian Torres, FBN 36498
BRIAN M. TORRES, P.A.
One S.E. Third Ave.
Suite 3000
Miami, Florida 33131
Tel: 305-901-5858 ext. 101
Fax: 305-901-5874
btorres@briantorres.legal
mrodriguez@briantorres.legal
e-service@briantorres.legal

Jose L. Baloyra, FBN 84603
BAYLORA LAW
201 Alhambra Cir., Ste. 601
Coral Gables, Florida 33134
Tel: (305) 442-4142
Fax: (305) 442-4377
jbaloyra@baloyralaw.com
rcruz@baloyralaw.com

John Cody German, FBN 58654
COLE, SCOTT & KISSANE, P.A.
Cole, Scott, & Kissane Building
9150 S. Dadeland Boulevard
Suite 1400
Miami, Florida 33156
Telephone: (786) 268-6415
Facsimile: (305) 373-2294
cody.german@csklegal.com
yvonne.orosa@csklegal.com

Milton Fuentes, FBN 123420
M. FUENTES & CO.
201 Alhambra Circle, Suite 601
Coral Gables, Florida 33134
Tel: (305) 447-1960
Fax: (786) 288-3808
mf@mfuenteslaw.com
sc@mfuenteslaw.com

*Counsel for Plaintiff, Roberto Hung Cavalieri*