## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

CASE NO. 1:17-cv-22010-MORENO/LOUIS

ROBERTO HUNG CAVALIERI,                                CLASS ACTION
individually, and SERGIO ENRIQUE
ISEA, individually, and on behalf of all
others similarly situated,

*Plaintiffs,*

v.

AVIOR AIRLINES C.A.,
a Venezuelan company

*Defendant.*

_____/

## JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES

The Plaintiffs, Robert Hung Cavalieri and Sergio Enrique Isea, on behalf of themselves and similarly situated Settlement Class members, move for final approval of the Settlement Agreement ("Settlement" or "Agreement") at Exhibit ("Ex.") A, which will resolve all claims against Defendant, Avior Airlines, C.A. ("Avior") in this six-year-long litigation. No Settlement Class Members submitted objections or requests to opt-out of the Settlement, and thus this Motion stands unopposed:

## I.      Factual background

On May 30, 2017, Plaintiff Hung Cavalieri sued on behalf of himself and all others similarly situated who purchased airline tickets for air travel with Avior Airlines, C.A. on flights departing from Miami International Airport (MIA) beginning five years prior to the filing of the Complaint. Plaintiffs allege that Avior charged them $80 at the gate at MIA before boarding their plane, or else they would not be allowed to board, and that this added charge violated the contract between them, as passengers, and Avior. Plaintiffs alleged that they were not provided with proper notice of this added charge, that this charge was not part of the ticketed price or included in their contract, and that Avior's demand that it be paid as a condition of boarding their flights was a breach of contract.  Avior denied that the charge was a breach of contract and denied that the passengers were not provided with proper notice of the added charge.

This case has been ligated for over six years. During that time, the Plaintiffs' case was dismissed with prejudice on the basis that it was preempted under the Airline Deregulation Act. The Plaintiffs appealed that decision to the U.S. Court of Appeals for the Eleventh Circuit, which reversed the dismissal and remanded the case to be litigated on the merits.[1]

While the case proceeded, the Parties engaged in substantial jurisdictional and merits-based discovery with over 10,000 documents and electronically stored information being reviewed. Various legal issues have been sharply litigated, including the core contractual issue and issues involving federal preemption under the Airline Deregulation Act, *inter alia*.

A formal mediation on May 31, 2022, was unsuccessful. After informal settlement negotiations, however, the Parties were able to strike a balance of interests under the circumstances

---

[1] The dismissal was reversed and the case remanded for further proceedings in *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843 (11th Cir. 2022).

which serve as the basis for the Settlement Agreement. Such interests include the precarity of Avior's own financial condition.

## II. Terms of the Settlement and Notice

The Settlement's terms appear within the agreement attached as Exhibit A. The following are a summary of the material terms:

A. <u>The Settlement Class</u>: "All persons who purchased airfare from a third-party booking agent or travel agent for a flight on Avior Airlines and (2) who were charged $80.00 when departing from Miami International Airport from May 30, 2012, through June 30, 2023. Excluded from the Class are 1) any persons who purchased airline tickets directly from Avior, 2) the Airline, the Airline's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Airline or its parents have a controlling interest and their current and former employees, officers, and directors, 3) the Judge or Magistrate Judge to whom this case is assigned and the Judge or Magistrate Judge's immediate family, 4) persons who execute and file a timely request for exclusion, 5) the legal representatives, successors, or assigns of any such excluded person; and 6) Plaintiff 's counsel and the Airline's counsel."

B. <u>Monetary Relief</u>: Settlement Class members will receive an electronic or written credit voucher from the Settlement Administrator in the amount of $16.69 applicable for travel with Avior that must be claimed within a period of two years from the time the voucher is issued.

C. <u>Nonmonetary Relief</u>: Avior has agreed to be bound by a Court order requiring it to provide all material terms in its Conditions of Carriage and in its Contract of Carriage in plain, clear language that is legally compliant, including disclosure of additional fees not included in the ticket price to be charged prior to departure at airports in the United States of America.

D. <u>Releases</u>: In this class action, Settlement Class Members will give up their right to sue Avior Airlines C.A. In return for agreeing to provide settlement benefits, Avior (and certain related entities and individuals defined in the Settlement Agreement) will be released from all claims relating to the facts underlying this lawsuit ("Released Claims").

E. <u>Class Settlement Notice</u>: A Short Form Notice of Class Settlement was to be sent via email to all potential Class Settlement Members appearing within Avior's retained passenger list, which is believed to include up to 70% of all passengers during the class period from May 30, 2012, through June 30, 2023. Additionally, the Short Form Notice was to be published once a week for three consecutive weeks during a 45-day claims period in Florida newspapers (the *Sun Sentinel*

circulated throughout south Florida and the *Tampa Bay Times* circulated throughout central Florida, where the highest concentration of potential Class Settlement Members are believe to reside), as well as a Spanish translation in Venezuelan newspapers (*Ultimas Noticias* circulated throughout Venezuela, and *El Tiempo* circulated throughout the province of Barcelona, where Avior is located and where a high concentration of potential Settlement Class Members are believe to reside). Additionally, a Long Form Notice of Class Settlement was to be published online on a dedicated website, https://aviorsettlement.com ("Settlement Website"). Finally, statutory notices pursuant to 28 U.S.C. § 1715 of the Class Action Fairness Act ("CAFA"), as well as § 4 of the Agreement, were timely sent by UPS or certified mail on July 21, 2023, to the Attorneys General of the United States, all fifty States, Washington, D.C., U.S. Territories, and to the Secretary of the U.S. Department of Transportation.

Settlement Administration: Because the Settlement here must be administered in the most efficient and affordable manner, the parties agreed that it would administered by Avior's personnel and legal counsel under the supervision of Plaintiffs' legal counsel.

Attorneys' Fees: The Parties did not begin to negotiate attorneys' fees and expenses until after agreeing to the principal terms set forth in the Settlement Agreements. Class Counsel agreed to limit their request to the Court for attorneys' fees and expenses to no more than $350,000 – well below their total lodestar of $821,062.50. Likewise, Avior agreed not to oppose such a request. Attorneys' fees and expenses awarded to Settlement Class Counsel will be paid independently of any benefit paid to the Class.

### III. Preliminary approval and extension of the notice period

In July 2023, the Plaintiffs filed a motion for preliminary approval the parties' settlement and certification of a settlement class. (Dkt. 210). The Court preliminarily approved the settlement and certified the settlement class that same month. (Dkt. 212). The Settlement required that Class Notice be distributed and published within forty-five (45) days of the entry of the Preliminary Approval Order. [D.E. 211-1 at 10 (¶8)]. By August 30, 2023, the parties fulfilled that obligation by distributing Class Notice by email, by publication, and on the settlement administration website, https://aviorsettlement.com. Thus, August 30, 2023, was the Class Notice Date.

In September 2023, while the notice campaign was ongoing, the parties filed a joint motion to extend the class notice period by nine days. (Dkt. 213). This was necessary because, after the settlement administration website went "live," it came to the attention of Settlement Class Counsel

that there was a technical error on the webpage that did not allow Settlement Class Members to insert the dates of their travel on Avior Airlines when making claims. Avior fixed the problem by September 8, 2023. Thus, there was a period of nine days during which putative Settlement Class Members could not submit claims forms through the settlement administration website. (This issue did not affect any Settlement Class Member's ability to submit a claim by email.). The Court granted the parties' request to the extend the period during which Class Members could respond to the Class Notice. (Dkt. 214).

IV.    **Results from the notice campaign.**

Notices were e-mailed to 265,114 potential Class Members, as identified from Avior's retained passenger list, through June 30, 2023. Exhibit ("Ex.") B (Declaration of Settlement Administrator) at 2 (¶7), Ex. 1. Of the emails sent, 38,052 resulted in "soft bounces" (emails that were not available temporarily) and 2,881 "hard bounces" (emails that do not exist anymore). *Id*. After the time expired for Settlement Class Members to object or opt out of the settlement, the Notice Administrator confirmed that there were thirteen claims, zero opt-outs, and zero objections to the settlement. *Id*. at 3 (¶10).

## MEMORANDUM OF LAW

**A.  The Legal Standard for Approval.**

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e). "[S]uch approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Under Rule 23(e), the following procedures govern the consideration of a class settlement:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 690 (S.D. Fla. 2014) (Moreno, J.) (citing Fed. R. Civ. P. 23(e)). All five requirements of Rule 23(e) are satisfied here.

**B.** **The Approved Notice Programs Gave the Best Practicable Notice to Class Members and Satisfied Rule 23 and Due Process.**

"For a court to exercise jurisdiction over the claims of absent Class members, there must be minimal procedural due process protection." *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377 (S.D. Fla. 2007). "In actions certified under 23(b)(3), class members should receive 'the best notice that is practicable under the circumstances.' " *Saccoccio*, 297 F.R.D. at 691 (quoting Fed. R. Civ. P. 23(c)(2)(B)). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id*. (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811--812 (1985)).

As the Court properly determined in its Preliminary Approval Order, the Settlement's Notice Program "is rationally and sensibly calculated to, under all circumstances, reasonably apprice members of the class of the pendency of this action, the terms of the agreement, and the right to object to the settlement agreement and to exclude themselves from it," and thus constituted the "best notice practicable under the circumstances" and met the "requirements of due process." (Dkt. 212 at 3). The Settlement's Notice Program has been and continues to be implemented in accordance with the Court's Orders. *See generally* Ex. B (Decl. of Settlement Admin.).

As detailed in the Settlement Administrator's declaration, notices were e-mailed to 265,114 potential Class Members, as identified from Avior's retained passenger list, which is believed to include up to 70% of passengers during the class period from May 30, 2012, through June 30,

2023. Ex. B at 2 (¶7), Ex. 1. Of the emails sent, 38,052 resulted in "soft bounces" (emails that were not available temporarily) and 2,881 "hard bounces" (emails that do not exist anymore). *Id*.

In addition, notice was provided via widely circulated weekly publications. Specifically, the short form notice was published once a week for three consecutive weeks during the 45-day claims period in Florida newspapers (the *Sun Sentinel* circulated throughout south Florida and the *Tampa Bay Times* circulated throughout central Florida, where the highest concentration of potential Class Settlement Members are believe to reside), as well as a Spanish translation in Venezuelan newspapers (*Ultimas Noticias* circulated throughout Venezuela, and *El Tiempo* circulated throughout the province of Barcelona, where Avior is located and where a high concentration of potential Settlement Class Members are believe to reside). Ex. B at 2-3 (¶8), Comp. Ex. 2. Coverage was further enhanced by the Settlement Website, which was hosted and available throughout the notification period and remains so. *Id*. at 3 (¶9).

Further, statutory notices required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, as well as § 4 of the Agreement, were timely sent by UPS or certified mail on or about July 21, 2023, to the Attorneys General of the United States, all fifty States, Washington, D.C., several U.S. Territories, and to the Secretary of the U.S. Department of Transportation. Ex. C (Proof of Service of Notice of Settlement Under Class Action Fairness Act), Ex. 1 (Declaration of Oriana Kabche) at 2-3 (¶¶3-6). No objections were received from any of those Attorneys General or from the Secretary of Transportation. *Id*. at 3 (¶7).

The Notice Program provided the Court with personal jurisdiction over all members of the Class, because they have received the requisite notice and due process. *See Shutts*, 472 U.S. at 811-12; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.").

Moreover, the Court-approved notice provided to Class Members was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). Each notice sent to Class Members, among other things, described the Class, the release, and relief agreed to, and informed Class Members of their right to opt-out and object, the

procedures for doing so, and the time and place of the Fairness Hearing. Ex. B, Ex. 1. Each Notice also notified Class Members that a class judgment would bind them unless they opted out, informed them that Class Counsel would be seeking attorneys' fees, and told them where they could obtain more information, such as the Settlement Website, where copies of the Agreement and Long-Form Notice were made and remain available for download. *Id*. Each Long-Form Notice, furthermore, provided detailed information about each Settlement, in a logical question-and-answer format. Ex. A (Class Action Settlement Agreement), Ex. B (Long Form Notice).

## C. The Settlement is Fair, Reasonable, and Adequate.

"The Court should approve a proposed class action settlement where it is 'fair, adequate and reasonable and is not the product of collusion between the parties.' " *Saccoccio*, 297 F.R.D at 691 (quoting *Bennett*, 737 F.2d at 986). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003).

Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted). Instead, "[i]n considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.' " *Id*. (quoting *Cotton*, 559 F.2d at 1330).

Thus, when determining whether a settlement is fair, adequate, and reasonable, Rule 23(e)(2) instructs courts to consider four factors: (1) whether "the class representatives and class counsel have adequately represented the class; [(2)] the proposal was negotiated at arm's length; [(3)] the relief provided for the class is adequate[;] and [(4)] the proposal treats Class Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). In determining whether the "relief provided for the class is adequate," the Court makes four additional inquiries:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3)

Fed. R. Civ. P. 23(e)(2)(C).[2]

### i. Class representatives and Settlement Class Counsel have adequately represented the class.

The Plaintiffs' interests are aligned and coextensive with those of absent Class Members. The Plaintiffs were subjected to the same alleged conduct and suffered the same alleged injuries as absent Class Members. More importantly, absent Class Members will equally benefit from the relief provided by the Settlement.

Settlement Class Counsel also has adequately represented the Class in this litigation and the Settlement. Counsel for each party is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Counsel zealously represented their clients' interests through protracted litigation before this Court and the United States Court of Appeals for the Eleventh Circuit for well over six years.

Moreover, in evaluating Class Representatives' and Settlement Class Counsel's adequacy, courts consider whether Settlement Class Counsel and the Plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *See* Rule 23(e)(2)(A) advisory committee's note to 2018 amendment. Courts thus consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

---

[2] That inquiry encompasses the factors historically employed by courts in this Circuit: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986; *see also Smith v. Wm. Wrigley Jr. Co.*, 09-60646CIVCOHNSELTZ, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action. Settlement Class Counsel conducted a thorough investigation and analysis of the Plaintiffs' claims and the Defendant's defenses and engaged in extensive formal discovery in connection with the Plaintiffs' claims, which is equally relevant here. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the case and prepared counsel for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel obtained "thousands" of pages of documentary discovery).

### ii. The Settlement is the product of good-faith, informed, and arms-length negotiations.

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." And courts have noted that a class-action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where it was "the result of informed, arms-length negotiations by experienced Class Counsel").

This Court is aware of how zealously the Parties and their counsel litigated this case for almost six years, prior to reaching the Settlements. *See* Ex. D (Crabtree Decl.) at 1-7 (¶¶3-26) (summarizing the history of the litigation in both this Court and the Eleventh Circuit). The sharply contested nature of the proceedings in this case readily illustrates the lack of fraud or collusion behind the Settlements. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("[t]his was not a quick settlement, and there is no suggestion of collusion"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

### iii. The Settlement provides adequate relief to the Class.

Rule 23(e)(2)(C)(i) instructs courts to consider whether the costs, risks, and delay of trial

and appeal militate toward a finding that a settlement provides adequate relief to the class. When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

In determining whether a settlement is fair in light of the potential range of recovery, this Court should be guided by the "important maxim[]" that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metrop. Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059.

The primary relief obtained through the settlement is Avior's agreement to provide meaningful injunctive relief. Avior will, in addition to providing the Class Members with financial consideration (discussed below), provide a robust disclaimer with respect to flights to or from the United States ["IMPORTANT: When checking-in for your flight at airports outside of Venezuela, you will be required to pay an amount corresponding to airport fees, government taxes, and service charges. This amount is not included in the ticket price, or the fees and taxes we display on our website prior to purchase or the websites of third-party booking agents or travel agents."], which will ensure that Avior's customers are aware, at the time of purchasing their tickets, that they will be responsible for additional fees, taxes, and charges. This disclaimer will ensure that Avior conducts business prospectively in accordance with Federal law and will proceed in conformance with the claims made by the Plaintiffs in this action. In the event Avior intends to incorporate by reference any terms in digital formats (such as through Avior's website or in e-tickets), Avior will provide a clear and conspicuous web link that conforms with 14 CFR §253, and that is displayed in a manner to ensure that potential passengers, as laypersons, understand that the link is to additional, material contract terms that they are agreeing to if they purchase the airfare ticket. This injunctive

relief will benefit all customers who will contract in the future with Avior for transportation services to or from the United States.

The financial benefits of the Settlements are also adequate. Class Counsel have a thorough understanding of the practical and legal issues that the Plaintiffs would continue to face litigating these claims against Avior, including during class certification and at trial. In the face of those challenges, Class members were given the opportunity to claim a $16.69 credit to purchase Avior airfare in the future that will be valid for two years from the date notice is disseminated. This is an outstanding result given the complexity of the action and the significant barriers that stand between the present juncture of the litigation and final judgment: class certification; interlocutory Rule 23(f) appeal of class certification; trial; and post-trial appeals.

This result is particularly meaningful in light of Avior's sworn attestation that, of the $80 Avior collected from each Class Member, all but $16.69 was remitted to various governmental entities to satisfy requisite taxes and fees. (DE 198-1 at ¶ 7). Avior's sworn attestation provided that the $16.69 was an "Avior administrative fee for payment of expenses including, but not limited to, payment for SABRE which charged a per passenger fee for entry/departure (each flight segment), security (AWA Security, Inc.), catering, handling and ground support at Miami International Airport." Thus, the Class Members were provided the opportunity to receive financial compensation equal to the sum that Plaintiffs claim Avior was improperly enriched, if the Plaintiffs' claims were, ultimately, successful.

Notices were e-mailed to 265,114 potential Class Members, only 2,881 of which resulted "hard bounces." Ex. B at 2 (¶7), Ex. 1. After the time expired for Settlement Class Members to object or opt out of the settlement, the Settlement Administrator confirmed that there were zero opt-outs, and zero objections to the settlement. *Id*. at 3 (¶10). This response illustrates that class members support the settlement's benefits.

### a. The costs and risks of trial.

While the Plaintiffs and Class Counsel are confident in the strength of their case, they are also aware of the various defenses available to Avior, as well as the risks inherent in this litigation. *First*, Avior has claimed that the Plaintiffs will be unable to prove that the class should be litigated on a class-wide basis. (DE 198). While the Plaintiffs disagree, this risk is not easily discounted because— in cases where subject matter jurisdiction is based on CAFA—the failure to obtain class certification can become dispositive. *See, generally, Perisic v. Ashley Furniture Indus., Inc.*, 8:16-CV-3255-EAK-

SPF, 2018 WL 8581976, at *5–6 (M.D. Fla. Nov. 7, 2018) (explaining how putative CAFA jurisdiction intersects with class certification). And even if the Plaintiffs were successful in having a class certified, Avior would inevitably seek interlocutory review of class certification rulings via Rule 23(f), further delaying the progress towards trial and any recovery for the Class.

*Second*, even if Class Certification were achieved, Avior still contends that it has valid defenses to the Plaintiffs' claims. Avior has always asserted that the "Exit Fee" at the center of the Plaintiffs' claims was fully disclosed to the Class Members when they purchased their Avior airfare and, accordingly, that disclosure absolved Avior of any potential liability. *See, generally*, DE 188 (Fourth Affirmative Defense). (Avior produced some evidence of such disclosures in electronic tickets purchased directly from Avior.) Avior also contends that any alleged insufficient disclosure, even if true (which Avior disputes), would have been as a result of the actions or inactions of third-party booking agents or travel agents. While the Plaintiffs disagree and contend that such disclosures did not satisfy applicable federal law governing the steps necessary to incorporate by reference additional contract terms, the Eleventh Circuit noted in its opinion reversing the Court's prior dismissal of the Plaintiffs' claims that Avior would have "potentially viable defenses" during the remand proceedings. *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 853 (11th Cir. 2022).

The litigation risks standing between the Plaintiffs and a successful judgment on the merits further support the adequacy of the Settlement. *See, e.g., In re HP Laser Printer Litigation*, 2011 WL 3861703, *6 (C.D. Cal. 2011) (approving settlement that provided class members with a $13 e-credit redeemable at defendant's Web site, as well as injunctive relief, in light of the significant litigation risk inherent in further litigation). Additionally, even if Plaintiffs prevailed at trial against Avior, any recovery could be delayed for years by an appeal. *See Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appeals could delay class recovery "strongly favor[s]" approval of a settlement).

*Third*, Avior's precarious financial condition creates an additional risk that could prevent the Class Members from obtaining any relief in this Action, even if the Plaintiffs succeeded in every other respect in the future. As Avior has affirmed that their exclusion from the US air travel market impacted their earnings, and the advent of the coronavirus also decreased air travel for a substantial time. Such financial distress further buttresses the reasonableness of the Settlement. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 n.4 (9th Cir. 2013) ("in-kind settlements may be particularly appropriate in situations where they provide real benefits to consumer class

members. For instance, … where a defendant is in financial distress or where class members have repeat-business relationships with the defendant.*")* (internal citation and quotation omitted).

Given the myriad risks attending these claims, the Settlement cannot be seen as anything but a fair compromise. *See, e.g., Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (citing the "very real potential that the [c]lass could come away from a long expensive trial with nothing," the court rejected the argument "that the Class should get more").

### b. The effectiveness of the distribution of the settlement benefits.

The primary benefit obtained from the settlement is injunctive relief that will require Avior to alter its business practices and ensure that its ticketing procedures comply with federal law (as that law is construed by the Plaintiffs through their allegations). This injunctive relief will not only prospectively benefit the Settlement Class Members but will benefit the public at large. Further, for each Settlement Class Member claimant, the Settlement distributes financial compensation to them for each "Exit Fee" assessed. This method of distribution ensures that benefits of the Settlement are provided directly to Settlement Class Members and ties such benefits to the wrong alleged. The distribution of benefits is thus both effective and reasonable.

### c. Attorneys' fees.

Class Counsel and Avior have agreed that, if approved by the Court, Avior will pay Class Counsel an amount up to $350,000 in attorney's fees and costs. Given Avior's financial condition, Class Counsel and Avior have agreed that $225,000 of that sum will be distributed to Class Counsel after any Final Approval Order becomes final for purposes of appeal, while the remaining $125,000 will be paid to Class Counsel over the following sixteen months in equal monthly installments, starting 120 days from the same date. These attorney's fees are being provided *in addition* to the financial and injunctive relief that is being provided to the Settlement Class Members and the fees are, thus, independent of the Settlement Class Members' relief and will have no effect on the financial relief provided to the Settlement Class Members. The reasonableness of Class Counsel's fee award will be more fully addressed below.

#### d. The Settlement represents the full agreement of the parties.

There is no other agreement between the parties that is required to be identified by Rule 23(e)(3) or any agreement made in connection with the Settlement that is not part of the Settlement.

### iv. The Settlement treats Settlement Class Members equitably relative to each other.

The Settlement treats all Settlement Class Members equitably. Rule 23(e)(2)(D) considers "whether the apportionment of relief among Class Members take[s] appropriate account of differences among their claims," *see* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment, which the Settlement does. The credit (to purchase Avior airfare in the future) that each Settlement Class Member will receive is based on Exit Fees that each Settlement Class Member identifies. Thus, credits will be received in direct proportion to the number and amount of Exit Fees each Settlement Class Member was required to pay. As the claims of all Settlement Class Members are otherwise identical and arise from the same conduct, there are no other pertinent differences for which to account.

## D. The Court should grant final certification of the Settlement Class.

For settlement purposes, Plaintiffs respectfully request that the Court certify the Class defined above and in the Settlement. "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Class certification is appropriate where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification of a class seeking monetary compensation also requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its Preliminary Approval Order, this Court previously found the requirements of Rule 23(a) and 23(b)(3) to be satisfied for the Class defined in the Settlement. (Dkt. 212). As the Class definition has not changed since preliminary approval, there is no reason for this Court to depart from its previous finding that certification of the Class is warranted.

The numerosity requirement of Rule 23(a) is satisfied because Avior has affirmed that, from May 30, 2012, to March 2, 2018, Avior collected Exit Fees from over one thousand passengers. (DE 195-1 at ¶ 10). Joinder of all such passengers is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quotation omitted). Here, the commonality requirement is satisfied because there are many questions of law and fact common to the Class that center on Avior's collection of the Exit Fee. That is apparent because the entire case revolves around an alleged common course of conduct performed by Avior—whether Avior charged each putative member an "Exit Fee" that was not provided for under their contract with Avior. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (finding that commonality under Rule 23(a)(2) to be generally met "if the allegations involve a common course of conduct by the defendant."). The case will turn on several overarching questions that are common to almost every member of the proposed class. *See Williams*, 568 F.3d at 1355 ("Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.' ") (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

For similar reasons, the Plaintiffs' claims are reasonably coextensive with those of the absent Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). The Plaintiffs are typical of absent Class Members because they were subjected to the same conduct and claim to have suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

The Plaintiffs also satisfy the adequacy-of-representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic

to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (quotation omitted). The Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Class, because the Plaintiffs and absent Class Members have an equal interest in the relief offered by the Settlements, and absent Class Members have no diverging interests. Further, the Plaintiffs are represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions. *See* DE 195-3 (Declarations from Class Counsel). Class Counsel have devoted substantial time and resources to vigorous litigation of this action from inception through the date of the Settlements.

"Predominance" under Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (quotation omitted). The Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Class Member.

Liability in this case will depend largely on what documents make up the governing contract between Avior and its passengers who purchased tickets from third-party booking agents, as well as the disclosures of the third-party booking agents or travel agents. That determination will be dispositive because it will show whether the Exit Fee was disclosed (and, thus, not a breach of the contract) or not disclosed (and, thus, a breach of contract). Plaintiffs alleged that the contract consisted of Avior's "Contract of Carriage" and the passenger tickets' terms. (DE 149-2 at ¶ 24). Avior, in contrast, contended that the contract was much broader and also included terms found on various webpages available on Avior's website, since those webpages were accessible via hyperlinks on Avior's Contract of Carriage. (DE 187 at 3). The crux of the parties' dispute is, thus, whether Avior's additional webpages, and the disclosures of the third-party booking agents or travel agents are part of the parties' "contract."

Since this case arises in the realm of federally-regulated air transportation, the make-up of the governing contract is, itself, governed by federal regulation. 14 C.F.R. § 221.3. Under that

regulation, Avior is permitted to incorporate by reference *additional* terms governing the air transportation. 14 C.F.R. § 221.3, 49 U.S.C. § 41707, 14 C.F.R. § 253.4(a). However, if an air carrier chooses to incorporate additional terms by reference, notice to the passenger must be provided. 14 C.F.R. § 253.4(a). The scope and nature of that required notice is, itself, governed by federal regulation. And, if the carrier fails to give the required notice, the carrier may not claim the benefit of those incorporated terms and the passenger cannot be bound by them.

Here, whether Avior satisfied the strict incorporation-by-reference requirements will turn, in large part, on an analysis of Avior's Contract of Carriage (where the hyperlinks are located). That contract governs all class members equally. As Avior readily admits: "[t]he Contract of Carriage readily available on Avior's website should be the same as the Contract of Carriage used by Avior since May 30, 2012." (DE 195-2 at ¶ 1). Each Class Member's ticket is similarly uniform. Avior's agent—SABRE—provided the governing tickets to Avior's passengers *regardless* of where the passenger purchased their ticket. (DE 198-1 at ¶ 5). There was, thus, a single ticket provider for all of Avior's flights. Courts in this circuit have routinely certified class actions that turn on the interpretation of form contracts. Indeed, the Eleventh Circuit has stated that "[i]t is the form contract, executed under like conditions by all class members, that best facilitates class treatment." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010).

**E. Class Counsel's Fee Application.**

Class Counsel and Avior have agreed that Avior will pay Class Counsel an amount up to $350,000 in attorney's fees and costs, if finally approved by the Court. These fees are being provided *in addition* to the financial relief that is being provided to the Settlement Class Members and the fees are, thus, independent of the Settlement Class Members' relief and will have no effect on the financial relief provided to the Settlement Class Members.

The Court has discretion to award attorneys' fees in this case under the lodestar method pursuant to the Class Action Fairness Act ("CAFA"). Section 1712(b)(1) of CAFA states:

> If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorneys' fee to be paid to Class Counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

28 U.S.C. § 1712(b)(1).

"As CAFA's legislative history shows, this provision allows a district court to use the lodestar method to calculate a reasonable attorneys' fee award in cases involving 'coupons;' the lodestar method compensates counsel based on time reasonably expended rather than on the value of the Class's recovery." *Perez v. Asurion Corp.*, 06-20734-CIV, 2007 WL 2591180, at *1–2 (S.D. Fla. Aug. 8, 2007) (citing S. REP. No. 109-14, at 31 (2005)). This attorney's fee award allowed under CAFA shall also anticipate and include "an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction …." 28 U.S.C. § 1712(b)(2).

i.      **The hours spent litigating this case by class counsel are reasonable.**

Class Counsel's declarations describe the extensive work performed in this litigation over the past six years. (The pre-suit due diligence phase of their work actually began in December 2016). Ex. D. (Crabtree Decl.) at 1-7 (¶¶3-26). Class Counsel worked together to efficiently litigate this case and to ensure they did not duplicate work when it could be avoided. In evaluating the reasonableness of the number of claimed hours worked, the "Court may [ ] rely on its own experience." *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, 1:20-CV-23771-KMM, 2022 WL 18704614, at *4 (S.D. Fla. Aug. 19, 2022) (internal citation omitted).

Class counsel's timesheets and accompanying declarations at Exhibits D-I represent that they spent the following number of hours in this litigation:

| Name | Firm | Number of Hours |
|------|------|:---------------:|
| John G. Crabtree | Crabtree & Auslander | 70.0 |
| Charles M. Auslander | Crabtree & Auslander | 44.63 |
| Brian C. Tackenberg | Crabtree & Auslander | 656.55 |
| Brian M. Torres | Brian M. Torres, P.A. | 201.6 |
| Nicolas Jimenez | Brian M. Torres, P.A. | 151.7 |
| Milton Fuentes | M. Fuentes & Co. | 267.5 |
| Cody German | Cole, Scott & Kissane | 84.5 |
| | **Total:** | **1,476.48** |

ii.     **Class counsel's hourly rates are reasonable.**

The hourly rates for each of the lawyers who staffed the case (whose credentials are set forth in accompanying declarations) are reasonable and commensurate with rates approved in other class actions litigated in this district. Class Counsel is requesting the following hourly rates:

| Name | Title | Years of Experience | Rate |
|------|-------|--------------------|------|
| John G. Crabtree | Crabtree & Auslander | 32 | $900/hr. |
| Charles M. Auslander | Crabtree & Auslander | 41 | $750/hr. |
| Brian C. Tackenberg | Crabtree & Auslander | 10 | $600/hr. |
| Brian M. Torres | Brian M. Torres, P.A. | 29 | $600/hr. |
| Nicolas Jimenez | Brian M. Torres, P.A. | 4 | $250/hr.[3] |
| Milton Fuentes | M. Fuentes & Co. | 26 | $500/hr. |
| Cody German | Cole, Scott & Kissane | 15 | $450/hr. |

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "What an attorney charges his clients is powerful, and perhaps the best, evidence of his market rate." *Martinez v. Hernando Cnty. Sheriff's Office*, 579 Fed. Appx. 710, 713–14 (11th Cir. 2014) (internal citation omitted). "The court is considered an 'expert' on reasonable rates and may use its independent judgment in evaluating whether the hourly rate is reasonable." *Thomas v. Comm'r of Soc. Sec.*, 6:23-CV-945-EJK, 2023 WL 7386041, at *2 (M.D. Fla. Nov. 8, 2023).

Class counsel have each submitted declarations containing biographies, evidence stablishing the normal billing rate that they charge their hourly clients, and prior orders establishing their reasonable rates. This evidence establishes the reasonability of the rates requested in this motion, which are consistent with the rates charged by lawyers of comparable skill and experience. *See, e.g., Fed. Trade Comm'n v. Life Mgmt. Services of Orange Cnty., LLC*, 6:16-CV-982-CEM-GJK, 2021 WL 4822417, at *2 (M.D. Fla. Sept. 22, 2021), *report and recommendation adopted*, 6:16-CV-982-CEM-GJK, 2021 WL 4819617 (M.D. Fla. Oct. 15, 2021) (finding rates up $750 per hour reasonable in Orlando).

Class Counsel, accordingly, submits the following lodestar amount for this litigation through the filing date of this Motion:

---

[3] Nicolas Jimenez was employed by Brian M. Torres, P.A., through May 2020, at which time he had four years of experience. The rate being sought is a historical rate, not a current rate.

| Name | Number of Hours | Rate | Lodestar |
|------|-----------------|------|----------|
| John G. Crabtree | 70.0 | $900/hr. | $63,000.00 |
| Charles M. Auslander | 44.63 | $750/hr. | $33,472.50 |
| Brian C. Tackenberg | 656.55 | $600/hr. | $393,930.00 |
| Brian M. Torres | 201.6 | $600/hr. | $120,960.00 |
| Nicolas Jimenez | 151.7 | $250/hr. | $37,925.00 |
| Milton Fuentes | 267.5 | $500/hr. | $133,750.00 |
| Cody German | 84.5 | $450/hr. | $38,025.00 |
| | | **Total Lodestar:** | **$821,062.50** |

The agreed fee award amounts to a substantial discount of Class Counsel's lodestar in this Action. This case has been heavily litigated for over six years. During that time, Class Counsel has undertaken multiple rounds of dispositive motion practice (before the Court, as well as a Magistrate), class certification briefing, extensive discovery, as well as two successful appellate proceedings arising out of this litigation in the Eleventh Circuit. *See Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 853 (11th Cir. 2022); *Cavalieri v. Avior Airlines C.A.*, 20-11468, 2022 WL 1530946 (11th Cir. May 16, 2022). Nevertheless, Class Counsel have considered the litigation risks inherent in further litigation and Avior's financial condition and have determined that ensuring settlement relief for the Class justifies a discounted fee award in this Action.

Attached at Exhibit J is a proposed order granting final approval to the class settlement.

<u>**Conclusion**</u>

Class Counsel respectfully requests that the Court enter an order that:

1. Grants final approval to the Settlement;
2. Certifies the proposed class in the Settlement pursuant to Rule 23(b)(3) and (e) for settlement purposes only, appoints as Class Counsel the attorneys and firms identified as Class Counsel in the Preliminary Approval Order, and appoints as Class Representatives the individuals identified as Class Representatives in the Preliminary Approval Order;
3. Awards Class Counsel attorneys' fees in the amount of $350,000; and
4. Enters Final Judgment dismissing the Action with prejudice, but reserving jurisdiction to enforce remaining terms of the Settlement Agreement.

Date:   November 20, 2023

Respectfully submitted by,

**_Counsel for Plaintiffs_**

By: _/s/ Milton Fuentes_
Milton Fuentes, Esq.
**M. Fuentes & Co.**
201 Alhambra Circle, Ste. 501
Coral Gables, Florida 33134
Tel: (305) 447-1960
Fax: (786) 288-3808
mf@mfuenteslaw.com
sc@mfuenteslaw.com

John G. Crabtree, Esq.
Charles M. Auslander, Esq.
Brian C. Tackenberg, Esq.
**CRABTREE & AUSLANDER**
240 Crandon Blvd., Suite 101
Key Biscayne, Florida 33149
Tel: (305) 361-3770
Fax: (305) 437-8118
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
btackenberg@crabtreelaw.com
floridaservice@crabtreelaw.com

Brian M. Torres, Esq.
**BRIAN  M. TORRES, P.A.**
One S.E. Third Ave., Ste. 3000
Miami, FL 33131
Tel: (305) 901-5812
Fax: (305) 901-5874
btorres@briantorres.legal
e-service@briantorres.legal

Cody German, Esq.
**COLE, SCOTT & KISSANE**
9150 S. Dadeland Blvd., Suite 1400
Miami, Florida 33156
Tel: (786) 268-6415
Fax: (305) 373-2294
Milton.Fuentes@csklegal.com
Cody.German@csklegal.com

**_Counsel for Defendant_**

By: _/s/ Arturo J. Bravo_
Arturo J. Bravo, Esq.
**CROSSWISE ATTORNEYS AT LAW**
3105 NW 107th Avenue, Suite 603
Doral, FL 33172
Tel: (786) 374-2372
team@crosswise.legal

Frank P. Cuneo, Esq.
Jessica B. Reyes, Esq.
**CRL LAW GROUP**
2655 S Le Jeune Rd, Suite 804
Coral Gables, FL 33134
Tel: (786) 332-6787
fpc@crllawgroup.com
jbr@crllawgroup.com
admin@crllawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, I electronically filed the foregoing document with the Clerk of Court via CM/ECF, and that all counsel of record will be served via CM/ECF Notification.

*/s/ Milton Fuentes*